IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LEE NORMAN,  )
                  )
    Plaintiff,   )
                  )
v.                )   CIVIL ACTION NO.
                  )
                  )   00-AR-1860-M
CITY OF BIRMINGHAM et al.,  )
                  )
    Defendants.  )
                  )

**ENTERED**
**NOV - 8 2000**

## MEMORANDUM OPINION

Before the court is the motion for summary judgment of defendant City of Birmingham ("the City"). Plaintiff, Lee Norman ("Norman"), alleges that the City violated 42 U.S.C. § 1983 by depriving him of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Plaintiff also pleads various state law claims against the City. For the reasons set forth below, defendant's motion is due to be granted.

## Pertinent and Undisputed Facts

Plaintiff alleges that on or about July 5, 1998, defendant Patrick Bishop ("Bishop"), a City police officer, was working off-duty as a security guard at the Brass Key Lounge ("Brass Key"), the third defendant in this action. Bishop's work at the Brass Key was



in accordance with City policy permitting its police officers to work off-duty jobs, including as nightclub security. On the same date, plaintiff alleges, Bishop was wearing his City police officer uniform and badge and his City-issued gun. Norman purportedly entered the Brass Key on said date and minutes thereafter, at the hands of Bishop, suffered assault and battery, false arrest, and false imprisonment. Norman avers that the Brass Key hired Bishop because he was a City police officer, that Bishop's allegedly negligent, intentional, and/or malicious acts are at least in part attributable to training by the City, and that as a result of them he sustained physical and mental injuries.

On January 5, 1999, the City Clerk received a letter from a local attorney, Carolyn Shields ("Shields"). In the letter, Shields stated that she represented Norman and that the purpose of the letter was to notify the City of Norman's claims against it and against Bishop. The letter gave the date of the alleged incident, the street address of the location of the alleged incident, the name of the officer allegedly involved as "P. Bishop", and his connection to Norman's purported injuries. In conclusion, Shields stated that her client's claim against the City was for $50,000 and requested that the City notify her if it did not intend to pay the claim. Almost a month later, on February 4, 1999, Norman filed a sworn

statement with the City Clerk using what appears to be the City's standard "Affidavit of Claim" form. In it, Norman provides some of the same information contained in the Shields letter, as well as additional pertinent information, such as the name and telephone number of an eyewitness, the name of the physician who treated him for his injuries, and the name of the hospital where he received that treatment. Two years to the day from the original incident at the Brass Key, Norman filed the present action in this court. The complaint's legal claims and factual allegations do not vary in a meaningful way from those contained in Shields's letter or Norman's Affidavit of Claim. Currently, his counsel of record is someone other than Shields.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a genuine issue of material fact, not merely some factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510. What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

The City having moved for summary judgment, the court must look at the evidence, construed most favorably to Norman, to see if a jury could return a verdict for him. If so, the City's motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for Norman, the City's motion must be granted.

### Section 1983 Claim

Section 1983 provides remedies for injuries resulting from constitutional violations by persons acting under the color of state law. 42 U.S.C. § 1983. While municipalities are considered "persons" for the purposes of § 1983, they cannot be held liable under that section on the basis of *respondeat superior*. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989); *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658,

691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Instead, it must be shown that a municipal policy or custom, whether official or not, was the "moving force" behind the allegedly unconstitutional conduct that caused the injury. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; see *Gold v. City of Miami*, 151 F.3d 1346, 1349 (11th Cir. 1998). Because liability can only attach "where the municipality *itself* causes the constitutional violation at issue", *City of Canton*, 489 U.S. at 385, 109 S.Ct. at 1203, this court's inquiry into the City's § 1983 liability begins and, as will become clear, ends with analysis of plaintiff's evidence of this causal link.

Norman presents two City policies on which municipal culpability could be based: allowing off-duty police officer work, including security work at nightclubs, and training of police officers. The Supreme Court specifically addressed the standard for attaching liability on the basis of police training in *City of Canton*, holding that inadequate training must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388, 109 S.Ct. at 1204; see *Gold*, 151 F.3d at 1349-1352 (applying the standard announced in *City of Canton* to the evidence proffered by plaintiff). Norman falls far short of this standard. Not only has

5

he failed to produce any evidence of how any City shortcomings in the realm of police training amount to "deliberate indifference," he has presented no evidence of any shortcoming whatsoever. A bald claim that plaintiff suffered injuries as a direct result of a municipality's training of one of its police officers cannot, as a matter of law, support a finding of liability under § 1983. *See City of Canton*, 489 U.S. at 389-90, 109 S.Ct. at 1205.

Similarly, merely claiming that responsibility for a policy permitting officers to work off-duty as nightclub security rests with the City is legally insufficient. Such an allegation standing alone does not link that policy to Bishop's conduct. *See Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404-05, 117 S.Ct. 1382, 1388-89, 137 L.Ed.2d 626 (1997); *City of Canton*, 489 U.S. at 389-90, 109 S.Ct. at 1205; *Robles v. City of Fort Wayne*, 113 F.3d 732, 736-37 (7th Cir. 1997) (finding insufficient plaintiff's evidence regarding city's failure to supervise police officers who worked off-duty as private security). Norman has failed to introduce any evidence, such as prior incidents of unconstitutional behavior by off-duty officers working as nightclub security, that might establish § 1983 culpability from the City's choices to initiate or to continue such policy.

### **State Law Claims**

The disappearance of Norman's only federal claim as against the City brings into play the question of whether this court should exercise supplemental jurisdiction over Norman's state law claims against the City. The controlling statute on this question is 28 U.S.C. §1367(c)(1),(3), which provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if---
>
> (1) the claim raises a novel or complex issue of State law [or]
>
> * * *
>
> (3) the district court has dismissed all claims over which it has original jurisdiction...

Although it is not mandatory that a federal court decline supplemental jurisdiction over state law claims when the basis for federal question jurisdiction is removed, principles of comity move this court in the direction of applying the parallel doctrine of abstention, a concept which becomes overwhelming if the federal court has both dismissed all claims over which it has original jurisdiction and found under §1367(c)(1) that the case presents a "novel or complex issue of State law". In this case, then, it becomes important to examine Norman's tort claims against the City to see if they present a novel or complex question of Alabama law.

7

The City contends that Norman's state law claims against it are time barred under § 11-47-23 of the Alabama Code. This statute provides that tort claims against municipalities "shall be presented within six months from the accrual thereof or shall be barred." Ala. Code § 11-47-23 (1975). The provision is to be read *in pari materia* with § 11-47-192, which states:

> No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

Ala. Code § 11-47-192 (1975); *see Etherton v. City of Homewood*, 741 So.2d 1078 (Ala. 1999); *Harris v. City of Montgomery*, 435 So.2d 1207, 1213-1214 (Ala. 1983). The purpose of these statutes is to provide notice to the municipality so that it can investigate the claim and determine the claim's merit. *See Etherton*, 741 So.2d at 1080. Despite the requirement in § 11-47-192 that the claim be presented in the form of a statement sworn to by the claimant, the Alabama Supreme Court has held that persons who present their § 11-47-23 claim by commencing an action against a municipality, without filing a sworn statement, within the six month period after accrual

8

are deemed to have satisfied § 11-47-192. *See Diemert v. City of Mobile*, 474 So.2d 663 (Ala. 1985); *see also*, *Patrick v. City of Florala*, 793 F.Supp. 301, 304 n.8 (M.D. Ala. 1992). Since *Diemert*, the court has characterized the "sufficient presentment" standard somewhat vaguely, announcing that "some presentment of the claim within six months of its accrual is mandatory." *Frazier v. City of Mobile*, 577 So.2d 439, 440 (Ala. 1991); *see Hill v. City of Huntsville*, 590 So.2d 876, 876 (Ala. 1991). These holdings comport with other cases where the Alabama Supreme Court has applied a broad standard of substantial, rather than technical, compliance with §§ 11-47-23 and 11-47-192 that turns on the question of whether the claim, as presented to the municipality, fulfilled the statutory purposes of alerting it of a claim against it, thus enabling it to determine for itself the merits of that claim. *See, e.g., Etherton*, 741 So.2d at 1080-1083 (finding inadequacies in the claim fatal because they meant that "the primary purpose of the statute requiring notice to the City could not be achieved" at 1082); *Large v. City of Birmingham*, 547 So.2d 457 (Ala. 1989) (requiring that the notice be presented to the authorized municipal representative and expressly make a claim against the municipality); *Fuller v. City of Birmingham*, 377 So.2d 957 (Ala. 1979) (noting under a similar

9

notice-of-claim statute applicable only to the City of Birmingham that plaintiff's claim, written and signed by her in the presence of witnesses, but not sworn to, could be sufficient).

Under Alabama law, a cause of action based on § 11-47-23 accrues when an action can be maintained. *See Couch v. City of Sheffield*, 708 So.2d 144, 154 (Ala. 1998). On this standard, Norman must have sufficiently presented his claims to the City by January 6, 1999, six months after his rights were allegedly violated at the Brass Key. Therefore, if his state law claims are to survive, the Shields letter must meet, in light of Alabama case law, the "presentment" requirements pursuant to §§ 11-47-23 and 11-47-192.

While the Shields letter appears clearly inadequate based on a quick reading of § 11-47-192's requirement that the claimant swear to the claim, the loosening of that presentment requirement by Alabama state courts creates a considerable question as to the sufficiency of Shields's letter. Nevertheless, this court would find that Norman's state law claims are time barred if this court were to decide the question. Why?

First, the rationale used in *Diemert* arguably does not apply here. That decision rested on the ground that requiring a claimant

to swear to a complaint made out against a municipality would conflict with the Alabama Rules of Civil Procedure, which call for swearing to a complaint only in stockholders' derivative actions filed under Rule 23.1. See *Diemert*, 474 So.2d at 666. In order to eliminate this conflict, the court exempted from the "sworn statement" requirement claimants who had presented their § 11-47-23 claim by commencing an action against a municipality. See *id*. No such conflict arises from insisting that a claimant swear to a claim that is **not** in the form of a complaint, such as Shields's letter.

Furthermore, aside from using this specific reasoning to justify its decision in *Diemert*, the court also impliedly rested on a series of cases holding, if perhaps without clearly expressed rationales, that the filing of a suit was sufficient presentment for claims against municipalities. In *Diemert*, the court quoted from *Browning v. City of Gadsden*, 359 So.2d 361 (Ala. 1978), *overruled on other grounds*, *City of Birmingham v. Davis*, 613 So.2d 1222 (Ala. 1992), to support its holding. *Browning* itself cites cases from the 1950s and 1930s, such as *Town of Linden v. American-La France & Foamite Industries*, 167 So. 548 (1936), for the same proposition; that opinion, in turn, cites pre-World War I cases. This court could not uncover such a foundation for the proposition that an attorney's signing and filing of a client's claim with a

municipality could be sufficient presentment.  In fact, this court's research did not yield any cases on point.

Finally, although the Alabama courts have not dealt with the question of the sufficiency of a claim made out by a claimant's attorney for purposes of § 11-47-23 and 11-47-192, the Alabama Supreme Court in *Elmore County Comm'n v. Ragona*, 540 So.2d 720 (Ala. 1989), addressed that precise question in the context of claims against counties.  Two statutes govern claims against counties.  One is Ala. Code § 6-5-20 (1975), which requires presentment of the claim to the county commission before an action can be commenced against the county.  The other is Ala. Code § 11-12-5 (1975), which requires, in part, that "[n]o claim against the county shall be passed upon or allowed by the county commission unless itemized by the claimant or some person in his behalf having personal knowledge of the facts."  The court rejected the county-defendant's argument that plaintiffs' claim was deficient because their attorney had signed and filed their claim with the county.  *See id.*, 540 So.2d at 722-23.  However, the court's rationale for finding a non-injured party's presentment of a claim to be sufficient against the defendant-county in *Ragona* does not extend to Norman's claims against the City.  The *Ragona* court relied on the words of § 11-12-5

12

in finding that plaintiffs' attorney was qualified to present their claim: he met the statute's express requirements of acting on his client's behalf and of having familiarity with the facts of their alleged injury. *See id*. The court also observed that the requirement that the claimant swear to the claim was deleted by legislative act in 1975. *See id*.

Similar reliance on the words of § 11-47-195, like § 11-12-5 a statute that addresses when a non-injured party, can sufficiently present a claim, may not come to Norman's rescue. Like § 11-12-5, § 11-47-195 allows a person other than the injured party to present a claim, but § 11-47-192 specifically limits this option to instances in which the injured party has died. Therefore, unlike the plaintiffs in *Ragona*, whose attorney did qualify under § 11-12-5, Norman arguably falls outside the circumstances contemplated under § 11-47-192 in which an attorney can present a client's claim. This court notes that differences in the wording of the statutes governing claims against counties and the statutes governing claims against municipalities have been determinative in other issues before the courts of Alabama. *See Ford v. Jefferson County*, No. 2990574, 2000 WL 1006540, at *4-5 (Ala. Civ. App. July 21, 2000).

Because an argument can be made that the Shields letter

satisfied the statutory purpose of putting the City on notice of Norman's claim and giving it enough information to investigate the merits of the claim, this court finds that the sufficiency of the Shields letter, written and signed by Norman's then-attorney on his behalf and notifying the City of his claim, but not sworn to by Norman himself, presents a novel, complex, and undecided question of Alabama law. It should be decided by the Alabama courts.

## CONCLUSION

A separate and appropriate order will be entered.

DONE this 8th day of November, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE